UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRIN NGO,<br><br>Plaintiff,<br><br>v.<br><br>PMGI FINANCIAL, LLC, et al.,<br><br>Defendants. | Case No. 18-cv-05401-JCS<br><br>**ORDER REGARDING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 10 |

## I. INTRODUCTION

Defendants PMGI Financial, LLC ("PMGI") and Law Offices of Kenosian & Miele, LLP ("Kenosian") move to compel arbitration of Plaintiff Darrin Ngo's claims under the Fair Debt Collection Practices Act and similar laws, and to dismiss this action or stay it pending arbitration. The Court held a hearing on November 16, 2018 and requested supplemental evidence and briefing, which the parties have since filed. For the reasons discussed below, the motion is GRANTED and the case is STAYED.[1]

## II. BACKGROUND

### A. Factual Record and Claims Asserted

Ngo states in his declaration that he took out a loan from LoanMe, Inc. in 2015, a time when he was "in dire straits" and knew he "had no way of negotiating any of the terms associated with the loan and would have to agree to whatever LoanMe demanded." Ngo Decl. (dkt. 19-1) ¶ 4. Ngo does "not remember signing, electronically or otherwise, any agreement to arbitrate," and states that he would not have done so. *Id.* ¶ 5

Defendants contend that Ngo electronically signed a loan agreement containing an

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

arbitration provision, which appears in the record as Exhibit A to the first declaration of Cesar Guzman (dkt. 20-1), a vice president and custodian of records of LoanMe, and is also attached to other witnesses' declarations. *See* Eliason Decl. (dkt. 10-1) Ex. 1; Ross Decl. (dkt. 10-2) Ex. 1. The agreement, which is six pages long, purports to require the parties to arbitrate all disputes directly or indirectly related to it. Guzman Decl. Ex. A at 3. Checkmarks purport to indicate Ngo's assent to the agreement and its arbitration provision. *Id.* at 5, 6. Guzman states in his declaration that the agreement "is executed by a Borrower pursuant to and in conformity with the Electronic Signatures in Global and National Commerce Act," and that Ngo "entered into a written loan agreement with LoanMe pursuant to the [sic] Ngo's execution of" the loan agreement. Guzman Decl. ¶¶ 2–3 (capitalization altered).

In a supplemental declaration filed after the hearing, Guzman states that "prior to [LoanMe] lending any money, all LoanMe borrowers or potential borrowers are provided with a unique user identification and temporary password to access LoanMe's secure web portal," and must use "a secure web browser, an accurate email address and . . . their banking routing number and account number," as well as login information for their banking institution, to obtain a loan. Guzman Supp'l Decl. (dkt. 37) ¶ 2 (capitalization altered). LoanMe also records telephone calls with applicants and borrowers. *Id.* According to Guzman, Ngo provided his personal information to LoanMe via telephone on February 23, 2015, and received a username and password to access his application page on LoanMe's internet portal. *Id.* ¶ 4. Ngo provided his banking information through the portal, and LoanMe's systems verified that information. *Id.* A few days later, Ngo spoke to a LoanMe representative by telephone who told him that LoanMe had conditionally approved his application, pending his acceptance of the terms of the loan agreement. *Id.* ¶ 5. "Thereafter on February 26, 2015, Ngo accessed the LoanMe web portal (with his unique username and password) and accessed the Note in its entirety (as one long document)." *Id.* ¶ 6. Guzman states that Ngo "entered into a written loan agreement" by "manually check[ing] each of the four boxes within the electronic version of the" agreement, including a box indicating that Ngo had read and understood the arbitration provision. *Id.* ¶¶ 6–7.

According to Guzman, Ngo failed to make payments on the loan, and LoanMe sold Ngo's

1  debt to Sunlan Corporation. Guzman Decl. ¶ 4; *see also* Ross Decl. ¶ 3 & Ex. 2. Sunlan later sold
2  the debt to Defendant PMGI. Ross Decl. ¶ 5; Eliason Decl. ¶¶ 3–5 & Ex. 2.

PMGI, through its counsel Defendant Kenosian, brought a limited civil action against Ngo for breach of contract in the California Superior Court for the County of San Francisco in August of 2016, and attempted service on Ngo at the headquarters of Ngo's employer in Cupertino, California. *See* Defs.' Req. for Judicial Notice ("RJN," dkt. 11) Ex. 2 (complaint); *id.* Ex. 3 (proof of service). When Ngo did not appear in that action, Defendants sought and obtained default judgment against him. *Id.* Exs. 4–7. Ngo first learned of the action and judgment against him when Defendants garnished his wages in 2017. Ngo Decl. ¶ 8. Ngo successfully vacated the default judgment against him for lack of actual notice and the state action remains pending. *Id.* ¶ 10; RJN Exs. 7, 9.

Ngo brought this action alleging that Defendants violated the federal Fair Debt Collection Practices Act, California's Rosenthal Fair Debt Collection Practices Act, and California's Fair Debt Buying Practices Act by, among other alleged wrongs, obtaining default judgment against him, garnishing his wages, delaying returning the garnished wages (including by backdating documents) after the judgment was vacated, failing to return the full amount garnished, and wrongfully accusing Ngo of identity theft. *See generally* Compl. (dkt. 1).

### B. The Parties' Arguments

Defendants argue in their motion that Ngo is required to arbitrate his claims because he validly agreed to the arbitration provision of the loan agreement through an electronic signature. Mot. (dkt. 10) at 7. Defendants contend—and Ngo does not dispute—that Defendant PMGI can assert LoanMe's rights under the agreement as an assignee, that Defendant Kenosian can also assert those rights as an agent of PMGI, and that the claims at issue fall within the scope of the arbitration provision. *Id.* at 7–9; *see generally* Opp'n (dkt. 19) (raising no dispute as to these issues). Defendants also argue that they did not waive their right to demand arbitration of these claims by filing a civil action to collect the purportedly unpaid debt, because the arbitration agreement allows the parties to pursue claims before small claims tribunals, and because the elements of the test for waiver are not satisfied. *Id.* at 9. Finally, Defendants request in the

alternative, without significant analysis, that the Court dismiss Ngo's claims under the abstention doctrines of *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Mot. at 10.[2]

Ngo argues in his opposition brief that Defendants waived their right to compel arbitration by filing a civil action for breach of contract. Opp'n (dkt. 19) at 5–7. He contends that the small claims exception in the agreement does not apply because Defendant brought a limited civil action, not a small claims action. *Id.* at 5. Ngo also argues that the applicable test for waiver is satisfied because Defendants had knowledge of the arbitration provision and acted inconsistently with their right to arbitrate by instead filing (and still continuing to prosecute) a judicial action, and that Ngo would be prejudiced if Defendants are allowed to their own claims in court while compelling Ngo to arbitrate his claims against them. *Id.* at 6–7. Ngo further contends that Defendants have not met their burden to show that he in fact signed the agreement—contrary to Ngo's own declaration that he does not remember signing an arbitration agreement—because Defendants have not presented evidence addressing how they purportedly obtained or verified Ngo's signature. *Id.* at 7–10. Finally, Ngo argues that the agreement is unconscionable, both procedurally because the arbitration agreement was contained within a six-page contract of adhesion offered when Ngo was desperate for a loan, and substantively because, according to Ngo, it is not clear that arbitration provision requires the lender to waive the same rights as the borrower. *Id.* at 11–15.

In their reply, Defendants contend that the loan agreement was a valid contract and that an electronic signature is valid under California and federal law. Reply (dkt. 20) at 4–5. Defendants argue that Ngo admits he applied for a loan, and cannot escape his obligations on the basis that he failed to read the contract. *Id.* at 5–6. Defendants' reply does not meaningfully address the question of what if any evidence in the record shows that, in obtaining the loan, Ngo was presented with and indicated his assent to the terms of the loan agreement and in its arbitration provision. *See id.* Defendants argue that the agreement is not unconscionable and that the terms

---

[2] Neither Ngo's opposition nor Defendants' reply addresses the issue of abstention.

4

of the arbitration provision are reciprocal. *Id.* at 6–9. With respect to waiver, Defendants contend that their limited civil action is "consistent with the letter and spirit of the Arbitration Provision," and further argue that there has been no waiver because "the arbitrable claims have not been litigated"[3] and Ngo has not shown prejudice. *Id.* at 9–10.

The Court invited Ngo to file a supplemental brief in response to Guzman's supplemental declaration. Ngo argues that, under California contract law, Defendants have not established that Ngo checked the boxes indicating his consent to the terms of the loan agreement because the supplemental declaration does not address what security measures LoanMe took to ensure that no one other than Ngo could have used LoanMe's online portal to check the boxes. Supp'l Br. (dkt. 39) at 2–4. Defendants also argue that section 1281.2 of the California Code of Civil Procedure requires the Court, rather than an arbitrator, to determine whether a party has waived its right to compel arbitration. *Id.* at 1–2.

## III. ANALYSIS

### A. Legal Standards

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability is, in principle, an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

---

[3] In making this assertion with little explanation, it is not clear whether Defendants believe that the claims at issue in the state court action are not arbitrable, that they have not actually been litigated, that they are not the same claims at issue here, or some combination of those possibilities.

5

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25. Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id.* at 303. Even where such a presumption arises, arbitration should be ordered only if the presumption is not rebutted. *Id.* at 301. Where the presumption applies, courts "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted)).

The Supreme Court in *Granite Rock* explained that the presumption in favor of arbitration "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" 561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The Supreme Court acknowledged that it has "never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' . . . Nor [has the Court] held that

courts may use policy considerations as a substitute for party agreement." *Id*. (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Where the parties "clearly and unmistakably" indicate their intent to do so, an agreement may delegate "threshold issues" of arbitrability, including the "enforceability, revocability or validity" of an arbitration clause, to the arbitrator rather than to a court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (citations omitted).

As a general rule, courts apply state contract law in determining the validity and scope of an arbitration agreement. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Thus, in determining whether there is a valid agreement to arbitrate, "courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Id*. (quoting *First Options*, 514 U.S. at 944). The parties do not dispute that California law governs the loan agreement at issue. *See* Guzman Decl. Ex. A at 3; Opp'n at 4; Reply at 3. The Court therefore looks to California law in addressing whether a valid agreement to arbitrate exists between Ngo and Defendants and (assuming it does) whether Ngo's claims fall within the scope of that agreement.

**B. Defendants Have Shown That Ngo Agreed to the Terms of the Loan Agreement**

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by the preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). A contract is not rendered invalid by the contract itself or any party's signature to it taking electronic form. 15 U.S.C. § 7001(a). A "symbol"—such as, here, a checkmark—may constitute an electronic signature. *See id.* § 7006(5) (defining the term "electronic signature" to include "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record"). Under California law, an "electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a); *see* Opp'n at 7 (invoking this standard); Reply at 4 (same). Ngo argues that Defendants have not met their burden to show that any mark on the loan agreement is attributable to Ngo as an "act of" Ngo.

7

In *Ruiz v. Moss Bros. Auto Group*, a California appellate court affirmed a trial court's implicit conclusion that the defendant Moss Bros. "did not present sufficient evidence to support a finding that [the plaintiff, Ernesto] Ruiz electronically signed" the purported arbitration agreement at issue, referenced in that decision as the "2011 agreement." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 838 (2014). The 2011 agreement consisted of just over two pages, "and the phrases 'Ernesto Zamora Ruiz (Electronic Signature)' and '9/21/2011 11:47:27 AM' appear in print on the third page, under the signature and date lines." *Id.* at 840. Moss Bros.' business manager "summarily asserted that Ruiz 'electronically signed' the 2011 agreement 'on or about September 21, 2011,' and that the same agreement was presented to 'all persons who seek or seek to maintain employment' with Moss Bros.," but did not explain how such signatures were verified. *Id.* at 839. Ruiz stated in a declaration that "he did not recall signing any arbitration agreement on September 21, 2011, or at any other time, and if he had been presented with an agreement that limited his ability to sue Moss Bros. he would not have signed it," although he left open the possibility that he might have signed a different arbitration agreement among stacks of paperwork and electronic forms that he signed when he was hired about a year and a half earlier. *Id.* at 840. In response, Moss Bros. submitted a second declaration of its business manager stating that, as part of an update to Moss Bros.' employee handbook, all employees were required to log into an electronic human resources system and agree to the 2011 agreement. *Id.* at 840–41. The court held that testimony to be insufficient because it did not explain "how she ascertained that the electronic signature on the 2011 agreement was 'the act of' Ruiz," and failed to address such questions as whether some other employee could have written Ruiz's name, and whether the date and time next to the purported electronic signature automatically recorded the actual date and time of signing. *Id.* at 843–44 (quoting Cal. Civ. Code § 1633.9(a)).

Unlike in *Ruiz*, where the plaintiff might well have taken no action whatsoever at the time the arbitration agreement was purportedly signed in his name, there is no question here that Ngo reached some sort of agreement with LoanMe at the time that he purportedly signed the loan agreement, because Ngo himself states that he "took out a loan from a company called LoanMe in 2015." Ngo Decl. ¶ 4. Ngo also concedes that the loan was governed by terms, stating that

8

because he "was in dire straits at the time," he believed that he "had no way of negotiating any of the terms associated with the loan and would have to agree to whatever LoanMe demanded." *Id.* Nevertheless, Ngo states that he "do[es] not remember signing, electronically or otherwise, any agreement to arbitrate," and would not have done so. *Id.* ¶¶ 5–6.

The loan agreement identifies "DARRIN NGO" as the borrower and includes four checkboxes, all four of which contain checkmarks, and two of which accompany statements potentially relevant to consent to the arbitration provision. *See* Guzman Decl. Ex. A. First, immediately following the provisions of the agreement addressing arbitration, there is a checkbox next to the statement: "YOU CERTIFY THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION PROVISION AND AGREE TO BE BOUND BY ITS TERMS." *Id.* at 5. Second, one of the three checkboxes at the end of the loan agreement accompanies the following statement:

> You have read all of the terms and conditions of this promissory note and disclosure statement and agree to be bound by its terms. You understand and agree that your execution of this note shall have the same legal force and effect as a paper contract.

*Id.* at 6 (fully capitalized in original; capitalization altered for ease of reading).

Although the record initially before the Court did not establish that Ngo had checked the boxes of the loan agreement, Guzman's supplemental declaration cures that defect. *See* Guzman Supp'l Decl. ¶ 6 ("Ngo manually checked each of the four boxes within the electronic version of the [loan agreement]. If Ngo had left any box unchecked, the [loan agreement] would have remained incomplete for a period of 30 days, at which time it would lapse . . . ." (capitalization altered)). Guzman also states that Ngo was required to use a 'unique" username and password provided by LoanMe to access and execute the agreement. *Id.* ¶¶ 4–6 ("This username and temporary password allowed *only* Ngo to access his application page on LoanMe's web portal." (emphasis added; capitalization altered)). Ngo's supplemental brief does not contest that Guzman's declaration serves to show that *someone* checked the boxes of the contract, but argues that because Guzman does not describe security measures taken in providing the username and password to ensure that no one else could intercept them, it is possible that someone other than

9

Ngo checked the boxes to execute the agreement. Supp'l Br. at 2–4.

Defendants' burden of proof to show an agreement to arbitrate is merely the preponderance of the evidence. *Rosenthal*, 14 Cal. 4th at 413. "A party required to prove something by a preponderance of the evidence need prove only that it is more likely to be true than not true." *People ex rel. Brown v. Tri-Union Seafoods, LLC*, 171 Cal. App. 4th 1549, 1567 (2009) (citation and internal quotation marks omitted). Based on the facts that Ngo sought to and did obtain a loan from LoanMe, Ngo Decl. ¶ 4, that Ngo's unique username and password were necessary to access the application page with the agreement, Guzman Supp'l Decl. ¶ 4, and that someone using Ngo's credentials checked the boxes to execute the agreement soon after a LoanMe representative informed Ngo that he needed to execute the agreement, *id.* ¶¶ 5–6, the Court has little difficulty concluding that it is more likely than not that Ngo executed the agreement. Ngo's statement that he does "not remember signing, electronically or otherwise, any agreement to arbitrate," *see* Ngo Decl. ¶ 5, is not inconsistent with that conclusion, and would encompass Ngo merely not recalling now whether he reviewed the agreement and recognized it as an agreement to arbitrate before checking the boxes. Ngo does *not* state that he did not check boxes to electronically sign a loan agreement, or, having reviewed the purported agreement offered by Defendants, that he does not recognize or did not sign this agreement. *See id.*

While this case has some similarities to *Ruiz*, it differs in at least three ways. First, whereas the record in Ruiz lacked evidence "that all Moss Bros. employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements," 232 Cal. App. 4th at 844, Guzman states here that the credentials provided to Ngo were necessary to access his application page, and that Ngo used those credentials to complete the loan agreement. Guzman Supp'l Decl. ¶¶ 4, 6. Second, as noted above, there is no real question that Ngo entered into some sort of agreement to obtain his loan, while in *Ruiz* the document at issue was presented to employees during the course of their employment, and it is not clear whether any demonstrable consequences, comparable to the loan that Ngo in fact received, would have resulted from employees signing or not signing the agreements. Third, nothing in the *Ruiz* opinion indicates a timeline comparable to this case, where Ngo's loan agreement was

executed soon after a LoanMe representative told Ngo that he needed to complete the agreement. Guzman Decl. ¶¶ 5–6.

Defendants have met their burden to show that Ngo electronically signed the loan agreement, including the arbitration provision included therein.

### C. The Arbitration Provision Is Not Unconscionable

Under California law, "[i]n order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000)). The Court need not address the question of procedural unconscionability because Ngo has not shown that the loan agreement's arbitration provision is substantively unconscionable.

Ngo's only argument as to substantive unconscionability is that the arbitration provision could be read as imposing greater restrictions on the borrower than on the lender, focusing on warnings in the contract regarding "your right[s]" to a jury trial, to a trial before a court of general jurisdiction, and to serve as a representative or participate in a representative action. *See* Opp'n at 13–14. The language at issue reads as follows:

> 1. You acknowledge and agree that by entering into this Arbitration Provision:
>
> (a) You are giving up your right to have a trial by jury to resolve any disputed alleged against us or related third parties;
>
> (b) You are giving up your right to have a court, other than a small claims tribunal, resolve any dispute alleged against us or related third parties; and
>
> (c) You are giving up your right to serve as a representative, as a private attorney general, or in any other representative capacity, and/or to participate as a member of a class of claimants, in any lawsuit filed against us and/or related third parties.

Guzman Decl. Ex. A at 4 (parts (a) through (c) fully capitalized and bold in original; capitalization altered and emphasis omitted here for ease of reading). Ngo takes issue with the fact that "nowhere in these boldfaced proclamations (or anywhere else in the arbitration agreement) is any indication that those rights are also given up by 'us and/or related third parties'—i.e., the holder of

11

the note," although he acknowledges some language indicating that the arbitration provision is binding on both parties. Opp'n at 13.

Reading the arbitration provision as a whole, there is no question that it applies equally to disputes brought by either party. The agreement provides in relevant part that, unless pursued in a small claims court, "all disputes . . . shall be resolved by binding arbitration only on an individual basis." Guzman Decl. Ex. A at 4, ¶ 2; *see also id.* at 5, ¶ 5. "Disputes" subject to the provision are defined broadly as "all federal or state law claims, disputes or controversies, arising form or relating directly or indirectly to the Loan Agreement" as well as "all claims based upon a violation of any state or federal constitution, statute or regulation," and includes among other specific examples "all claims asserted *by us against you*, including claims for money damages to collect any sum we claim you owe us." *Id* at 3. The note holder thus is bound to arbitrate (on an individual basis) any claims it may have against Ngo, and therefore gives up the same rights that Ngo identifies above.

While the agreement could perhaps be clearer that the obligations and waivers of rights are reciprocal, there is some sense in spelling out more clearly the effect of agreeing to arbitration on borrowers—some of whom may be unsophisticated and unrepresented when they take out a loan and agree to the arbitration provision—than the effect on the lender, who presumably drafted this agreement with the assistance of counsel and understands the nature of arbitration. Regardless, because the effects are in fact reciprocal, there is no merit to Ngo's argument that the arbitration is substantively unconscionable for requiring greater waivers of rights by him than by Defendants. Ngo has not shown that the agreement is unconscionable under California law, and cannot avoid arbitration on that basis.[4]

### D. Waiver by Filing Civil Action

Ngo contends that Defendants waived their right to demand arbitration by filing a civil action against in him in the California Superior Court for the County of San Francisco, rather than pursuing arbitration of Defendants' claim for Ngo's purported failure to repay his loan.

---

[4] At the hearing, Ngo's counsel stated that "the unconscionability argument was made in an abundance of caution," and that Ngo did not contest the Court's conclusion as to that issue.

12

Defendants argue that the civil action was consistent with the provision of the arbitration agreement allowing any party to pursue relief in a "small claims tribunal," which reads in full as follows:

> All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the county of your residence for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

Guzman Decl. Ex. A at 5, ¶ 5.

In California, small claims courts are established by statute. *See* Cal. Civ. Proc. Code § 116.210 ("In each superior court there shall be a small claims division. The small claims division may be known as the small claims court."). Jurisdiction is generally limited to claims not exceeding $5,000, *id.* § 116.220(a)(1), although a natural person may generally bring a claim for up to $10,000, *id.* § 116.221. Small claims actions are therefore distinct from "limited civil cases," which may include claims up to $25,000. *See* Cal. Civ. Proc. Code § 86(a)(1).

Defendant PMRI, through its agent Defendant Kenosian, filed the state court action against Ngo as a limited civil action, checking a box indicating that the amount demanded was "$25,000 or less." RJN Ex. 2 at 9 of 138. The complaint sought damages totaling $5,398.14, plus unspecified attorneys' fees and costs. *Id.* at 17 of 138. Given the clear distinction between small claims actions and limited civil actions under California law, and the fact that the demand of the state court complaint exceeded the jurisdiction of a California small claims court for a claim by a corporate entity, Defendants' argument that their civil action falls within the arbitration agreement's exception for "small claims tribunals" is frivolous.

The question, then, is whether Defendants' filing of a civil action in state court rather than a claim for arbitration waives their right to demand arbitration of Ngo's claims here. The parties agree that the test described by a California appellate court in *Aviation Data, Inc. v. American Express Travel Related Services Co.*, 152 Cal. App. 4th 1522 (2007), applies to this case:

> "To prove that a waiver of arbitration exists, a party must demonstrate '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party

13

> opposing arbitration resulting from such inconsistent acts.' [*Letizia v. Prudential Bache Sec.*, 802 F.2d 1185, 1187 (9th Cir. 1986).] The party arguing waiver 'bears a heavy burden of proof.' [*Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).] Any doubts as to waiver are resolved in favor of arbitration. [*See Moses H. Cone*, 460 U.S. 1, 24–25 (1983).]"

*Aviation Data*, 152 Cal. App. 4th at 1537 (quoting *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) (internal citations in brackets appear in *Creative Telecommunications* but were omitted in *Aviation Data*); *see also* Mot. at 9 (quoting this standard); Opp'n at 6 (same). The *Aviation Data* court described this as "the federal rule," but held that the "California rule on such a litigation waiver is in accord." *Aviation Data*, 152 Cal. App. 4th at 1537 (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1195 (2003)). In *St. Agnes*, the California Supreme Court cited with approval an additional set of factors relevant to this question:

> "In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.'"

*St. Agnes*, 31 Cal. 4th at 1196 (quoting *Sobremonte v. Superior Court*, 61 Cal. App. 4th 980, 992 (1998) (quoting *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988))) (alteration in original).

It is worth noting that Defendants' decision to file the state court action rather than pursue arbitration did not merely fail to utilize a right granted by the loan agreement, but in fact appears to have violated the loan agreement's arbitration provision. The agreement provides in relevant part that, unless pursued in a small claims court, "all disputes . . . shall be resolved by binding arbitration." Guzman Decl. Ex. A at 4, ¶ 2; *see also id.* at 5, ¶ 5. The term "disputes" is defined to "all claims asserted by us [i.e., LoanMe and its successors or agents] against you [i.e., Ngo], including claims for money damages to collect any sum we claim you owe us." *Id.* at 3. This

14

might be a relevant consideration in determining whether Defendants waived the right to arbitrate claims arising out of their own litigation activities taken in apparent violation of the agreement to arbitrate, as Ngo's claims do here.

The parties' initial briefs failed to address, however, the question of whether waiver is itself an issue for this Court to decide, or for an arbitrator. The Supreme Court has held that waiver is not a "question of arbitrability" presumptively for a court to decide, but instead falls among a class of "'procedural' questions which grow out of the dispute and bear on its final disposition [that] are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation and internal quotation marks omitted). Thus, "the presumption is that the arbitrator should decide 'allegation[s] of *waiver*, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24–25) (emphasis added). That presumption holds particularly true here, where the arbitration agreement at issue explicitly delegates to the arbitrator "disputes . . . arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." Guzman Decl. Ex. A at 3; *see also Mohamed*, 848 F.3d at 1208–09 (holding that even certain threshold issues *not* presumptively allocated to an arbitrator may be delegated to an arbitrator if such intent is clearly stated in an arbitration agreement) (citing, *e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In his supplemental brief, Ngo cites section 1281.2 of the California Code of Civil Procedure, which states that a court shall compel arbitration "unless it determines that . . . [t]he right to compel arbitration has been waived by the petitioner." Cal. Civ. Proc. Code § 1281.2; Supp'l Br. at 1–2. The Court explicitly and unequivocally denied Ngo's request at the hearing to address this issue in his supplemental brief, instead limiting the scope of that brief to the supplemental evidence submitted by Defendants. Regardless, as noted above, the Ninth Circuit and Supreme Court have construed the FAA as requiring courts to enforce parties' explicit agreements to arbitrate threshold issues of arbitrability. *Rent-A-Ctr.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party

seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Mohamed*, 848 F.3d at 1208–09. The Supreme Court has also held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). Reading *Rent-A-Center* and *Concepcion* together, state law cannot prohibit arbitration of threshold issues of arbitrability if the parties have expressly agreed to arbitrate them in a contract governed by the FAA.

The broad scope of the delegation clause here encompasses a claim of waiver, as falling within "disputes [regarding] the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." *See* Guzman Decl. Ex. A at 3. To the extent that section 1281.2 could be construed as requiring judicial determination rather than arbitration of waiver under these circumstances, it is preempted by the FAA. The Court need not decide whether, in the absence of an express delegation clause, section 1281.2 controls over "the presumption . . . that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *See Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone*, 460 U.S. at 24–25).

Accordingly, the Court holds that although the motion to compel arbitration cannot be denied on the basis of waiver, Ngo remains free to assert this argument to an arbitrator.

## IV. CONCLUSION

Defendants' motion is GRANTED, and this action is STAYED pending arbitration of all claims determined by an arbitrator to be subject to the parties' arbitration agreement. If, however, the arbitrator determines that Defendants have waived their contractual right to compel Ngo to arbitrate his claims despite his preference for a judicial forum, Ngo may at that time pursue his claims in this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

16

The Court does not reach at this time Defendants' alternative argument for abstention under *Younger* or *Colorado River*, which the parties did not address in sufficient detail to reach a reasoned conclusion.

**IT IS SO ORDERED.**

Dated: December 18, 2018

JOSEPH C. SPERO
Chief Magistrate Judge